UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Michael C. Plante, Sr.,

        Plaintiff,

        v.                         Civil Action No. 2:11-CV-77

Michael J. Astrue,
Commissioner of Social Security,

        Defendant.

## OPINION AND ORDER
(Docs. 9, 10)

Plaintiff Michael C. Plante, Sr. brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting review and remand of the decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits.  Pending before the Court are Plante's motion to reverse the Commissioner's decision (Doc. 9), and the Commissioner's motion to affirm the same (Doc. 10).  For the reasons stated below, Plante's motion is denied, and the Commissioner's motion is granted.

## Background

Plante was forty-five years old on the date he alleges his disability began, March 5, 2006.[1]  (Administrative Record ("AR") 56, 103, 244, 248, 282.)  He has a high school education (AR 60, 288), and has worked from 1998 through 2004 as a construction

---

[1] In his written application for disability benefits, Plante alleged that he became disabled on August 1, 2004.  (AR 244, 248, 282.)  At the initial administrative hearing on the application, however, he amended that date to March 2006, "the date that [he] began treatment at . . . a substance addiction treatment center."  (AR 56; *see* AR 10.)

worker, an owner/operator of a construction business, a real estate salesperson, an

owner/manager of a Chinese food restaurant, and a home-weatherization contractor (AR

40-41, 57, 60-63, 81, 94, 283, 326-30).  Plante is married and has two children, who were

in the State's custody during most of the alleged disability period due in part to his and

his wife's past substance abuse.  (AR 68-69, 79-80, 249, 413, 712, 761.)  He has a

criminal past, having been arrested at least four times including for theft, arson, and

marijuana possession, and having been incarcerated at least once.  (AR 440, 690.)  He

also has a history of opioid and cocaine dependence, in remission as of the alleged

disability onset date, attending multiple outpatient treatment facilities before and during

the alleged disability period.  (AR 65-69, 396, 400, 413, 418, 440, 455, 458, 587, 621,

623, 690, 712.)  In addition to having legal and substance abuse problems, Plante suffers

from chronic pain, mostly in the back, shoulders, and arms, apparently caused or

exacerbated by multiple automobile accidents, as well as a crushing injury which

occurred when a vehicle that he was working on fell on top of him.  (AR 423, 712.)  He

has also been diagnosed with depression and attention-deficit/hyperactivity disorder

("ADHD").  (AR 587.)

On July 14, 2008, Plante filed applications for disability insurance benefits

("DIB") and supplemental security income.  (AR 244-52.)  In his DIB application, he

alleged that, starting on August 1, 2004,[2] he was unable to work due to fibromyalgia,

myofascial pain syndrome, chronic back pain, right knee pain, a herniated disk in his

---

[2]  As noted earlier, at the initial administrative hearing on the DIB application, Plante amended
the alleged disability onset date to March 5, 2006.  (AR 10, 56.)

neck, depression, right shoulder pain, ADHD, and other generalized aches and pains. (AR 282.) He further claimed that he had difficulty concentrating and focusing, and could not stand or sit for long periods of time. (*Id.*) Plante's application was denied initially and upon reconsideration, and he timely requested an administrative hearing. (AR 103-09, 149-50.)

On January 7, 2010, Administrative Law Judge ("ALJ") Debra Boudreau conducted a hearing, at which Plante appeared and testified, and was represented by counsel. (AR 51-102.) Soon thereafter, the ALJ issued a decision finding that Plante was not disabled. (AR 113-22.) The Decision Review Board ("DRB") vacated that decision, and remanded to the ALJ for a new hearing, which took place before the same ALJ on August 23, 2010. (AR 25-50, 129-31.) Plante again appeared and testified at the hearing, and was represented by counsel. (AR 25-50.) Additionally, vocational expert ("VE") Christine Spaulding testified at the hearing. (AR 38-49.) On October 1, 2010, ALJ Boudreau issued a new decision on Plante's application, again finding that he was not disabled. (AR 7-18.) The DRB failed to act on the claim within the required time period, thus making the ALJ's decision final. (AR 1-3.) Having exhausted his administrative remedies, Plante filed the Complaint in this action on March 28, 2011. (*See* Doc. 3.)

## **ALJ Determination**

The Commissioner uses a five-step sequential process to evaluate disability claims. *See Butts v. Barnhart*, 388 F.3d 377, 380-81 (2d Cir. 2004). The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not so

engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether the claimant's impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). 20 C.F.R. §§ 404.1520(d), 416.920(d). The claimant is presumptively disabled if the impairment meets or equals a listed impairment. *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the fourth step requires the ALJ to consider whether the claimant's "residual functional capacity" ("RFC") precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). The fifth and final step requires the ALJ to determine whether the claimant can do "any other work." 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's residual functional capacity").

Employing this sequential analysis, ALJ Boudreau first determined that Plante had not engaged in substantial gainful activity since March 5, 2006, the amended alleged disability onset date. (AR 10.) At step two, the ALJ found that Plante had the following severe impairments: degenerative disc disease, opioid dependence in remission, ADHD,

cervical spine herniated nucleus pulposus, and status post knee arthroscopy with residual pain.  (*Id.*)  At step three, the ALJ found that Plante did not have an impairment or combination of impairments that met or medically equaled a listed impairment.  (*Id.*)

Next, the ALJ determined that Plante had the RFC to perform light work, as defined in 20 C.F.R. § 404.1567(b), except that he could only occasionally climb, balance, stoop, kneel, crouch, and crawl; and he could only occasionally reach overhead with his non-dominant right upper extremity.  (AR 12.)  The ALJ further determined that Plante was limited to "routine, repetitive work in a low-stress environment . . . [involving] only occasional changes in work setting or routine."  (*Id.*)  At step four, the ALJ determined that Plante was unable to perform any past relevant work.  (AR 16.)  And at step five, she concluded that, based on the above RFC and testimony from the VE, there were jobs existing in significant numbers in the national economy that Plante could perform, including cafeteria attendant, cleaner, laundry worker, "collator-operator," marker, simple machine operator, and "compression molding machine tender[er]."  (AR 17.)  The ALJ concluded that Plante had not been under a disability from the alleged onset date of March 5, 2006 through the date of the decision.  (AR 18.)

## Standard of Review

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A person will be found to be disabled only if it is determined that his

"impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

In reviewing a Commissioner's disability decision, the court limits its inquiry to a "review [of] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard."  *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g).  A court's factual review of the Commissioner's decision is limited to determining whether "substantial evidence" exists in the record to support such decision.  42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Poupore*, 566 F.3d at 305.

Although the reviewing court's role with respect to the Commissioner's disability decision is "quite limited[,] and substantial deference is to be afforded the Commissioner's decision," *Hernandez v. Barnhart*, No. 05 Civ. 9586, 2007 WL 2710388, at *7 (S.D.N.Y. Sept. 18, 2007) (quotation marks and citation omitted), the Social Security Act "must be construed liberally because it is a remedial statute that is intended to include, rather than exclude, potential recipients of benefits," *Jones v. Apfel*, 66 F. Supp. 2d 518, 522 (S.D.N.Y. 1999); *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d

Cir. 1981) ("In its deliberations the District Court should consider the fact that the Social Security Act is a remedial statute to be broadly construed and liberally applied.").

<u>**Analysis**</u>

**I.     ALJ's Severity Determination**

**A.     Depression**

Plante argues that the record is "replete with medical evidence that [he] suffered from depression," and that the ALJ erred in failing to find that his depression was a severe impairment.  (Doc. 9 at 18.)  But a review of the ALJ's decision as a whole reveals that the ALJ did in fact consider Plante's depression, as well as the underlying evidence documenting such condition.  Specifically, at step two of her analysis, noting Plante's May 2010 psychiatric admission, the ALJ stated that Plante "suffers from depression [and] endorsed symptoms [of] discouragement, hopelessness, [and] anhedonia[3]."  (AR 10 (citing AR 679-703).)  Moreover, in determining Plante's RFC, the ALJ again stated that Plante "suffers from depression," and specifically discussed October 2008 progress notes from Plante's treating therapist, Dr. William Long, which indicated that Plante's depression "was largely secondary to issues related to chemical dependency, earlier life issues, and ADD."  (AR 14 (citing AR 545).)  Also in conjunction with her RFC analysis, the ALJ again considered Plante's May 2010 psychiatric admission notes, acknowledging that they documented an "exacerbation of [Plante's] depression symptoms."  (AR 15 (citing AR 640-63).)  Reviewing this evidence in conjunction with the entire record,

---

[3] "Anhedonia" is defined as "[a]bsence of pleasure from the performance of acts that would ordinarily be pleasurable."  STEDMAN'S MEDICAL DICTIONARY 93 (28th ed. 2006).

however, the ALJ found that the exacerbation of Plante's depressive symptoms in May 2010 "was caused by life stressors and [wa]s not reflective of [Plante's] condition in its entirety."  (AR 15.)  The ALJ further stated that, in subsequent visits to Dr. Long, Plante's condition improved significantly (*id.* (citing AR 755-56)); and that, even while hospitalized in May 2010, Plante "became less depressed and noted no longer being suicidal . . . [and] be[ing] forward[-]looking in planning" (*id.* (citing AR 662)).  The ALJ concluded:  "Considering the record as a whole, this temporary exacerbation cannot be considered to be reflective of [Plante's] presentation and history of mental health impairments."  (AR 15.)  The ALJ continued to consider Plante's depression in her RFC analysis, stating that in July 2009, Dr. Long "noted that [Plante's] depression was largely tied to his environmental situation and functioning."  (AR 16 (citing AR 592-95).)

Given the depth of this analysis, and finding that there is substantial evidence in the record to support the ALJ's conclusions regarding Plante's depression, the Court holds that the ALJ's failure to find at step two that Plante's depression was a severe impairment amounted to harmless error.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) (applying harmless error standard in social security context, and holding that, "where application of the correct legal principles to the record could lead to only one conclusion, there is no need to require agency reconsideration").  In general, an ALJ's omission of an explicit finding of a step two impairment or limitation where substantial evidence supports the presence of such impairment or limitation, does not in and of itself require remand.  *See Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003).  This is particularly the case where, as here, the omitted impairment or limitation

was accounted for in the ALJ's RFC determination, or in other words, where the ALJ's step-two error did not prejudice the claimant at later steps in the sequential evaluation process. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (finding that any error ALJ committed in failing to list plaintiff's bursitis at step two was harmless, because the ALJ "extensively discussed" the bursitis and "considered any limitations posed by [it] at [s]tep 4"); *Waters v. Astrue*, No. 5:10-CV-110, 2011 WL 1884002, at *5 (D. Vt. May 17, 2011) ("Since the ALJ considered Plaintiff's alleged cognitive limitations at other steps in his analysis, any error by the ALJ in failing to include this impairment at step two was harmless."); *cf. Sarver v. Comm'r of Soc. Sec.*, No. 07-11597, 2008 WL 3050392, at *14 n.7 (E.D. Mich. Jul. 28, 2008) ("Admittedly, in some instances an improper Step Two omission serves to invalidate the entire decision.").  ALJ Boudreau explicitly considered Plante's depression in some detail both at step two and in determining Plante's RFC, accurately citing to the relevant medical evidence.  Therefore, Plante was not prejudiced by the ALJ's failure to state at step two that such impairment was severe.

**B.    Left Shoulder Tendinitis**

Plante also asserts that the ALJ should have determined that his left shoulder tendinitis was a severe impairment.  (Doc. 9 at 18.)  The Court finds, however, that the record does not support such a finding, and thus the ALJ did not err on these grounds.  The regulations define a "severe" impairment as one "which significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c); *Meadors v. Astrue*, 370 F. App'x 179, 182 (2d Cir. 2010).  The Social Security Administration has explained that the claimant's burden of demonstrating a

severe impairment entails demonstrating that the claimant's impairment or combination of impairments causes more than a "minimal effect" on the claimant's ability to perform basic work activities.  SSR 85-28, 1985 WL 56856, at *3 (1985).

Plante does not cite any evidence establishing that his shoulder condition more than minimally affected his ability to perform basic work activities.  In fact, the record demonstrates that, during the alleged disability period, Plante was able to perform activities such as cutting firewood and stocking shelves (AR 418, 543, 550, 627), which would seem to have been precluded by a severe shoulder condition.  As the Commissioner points out, no medical source has established any limitations on Plante's functional capacity due to his left shoulder pain.  (Doc. 10 at 11.)  Rather, the medical evidence reveals only mild abnormalities in Plante's shoulder.  For example, a July 2010 x-ray of Plante's shoulder demonstrated only "mild degenerative changes," and noted "no evidence of a fracture or dislocation" and otherwise normal results.  (AR 763.)  Plante himself reported to medical providers in 2008 that his shoulder condition affected his functionality only minimally, if at all; and he exhibited full range of motion and normal strength of his left arm on examination.  (AR 496 ("not reporting any ADL's [sic] or functional mobility tasks interrupted by his recent [shoulder] condition"); 505 (complaining of only "mild [shoulder] pain" and physical therapist noting that "[t]he majority of [the] time[,] [Plante] has full functional mobility and has met all [long-term goals] with the exception of radiculopathy symptoms"); 544 ("not particularly bothered

by his [neck, throat, and arm] symptoms").)[4]

## II.    ALJ's Consideration of Medical Opinions

Plante claims that the ALJ erred by giving little weight to the opinions of his

treating therapist, Dr. William Long, and great weight to the opinions of agency

consultant Dr. Francis Cook.  The Court disagrees, as explained below.

### A.    Dr. Long

Dr. Long has been Plante's treating physician since November 2007.  (AR 545.)

In October 2008, which was over two years after Plante alleges he became disabled, Dr.

Long opined that Plante was not disabled from a mental standpoint.  (AR 545-46.)

Specifically, the Doctor stated:

> Psychologically speaking[,] his diagnosis include[s] depression which has
> been largely secondary to issues related to chemical dependency but is also
> related to earlier life issues and [ADHD]. . . .  From a standpoint of
> disability[,] *his psychological issues do not create a significant barrier to
> employment* and although some of the issues are around his [ADHD] . . .[,]
> *I do not see him as disabled in anyway [sic] from a psychological
> standpoint.*

(AR 545, 546 (emphases added).)  Later, in July 2009, Dr. Long noted that Plante had

made great progress, but still experienced significant depression "which is largely tied to

the environmental situation in which he has to function."  (AR 594.)  The Doctor further

stated that Plante's "disease processes . . . continue[s] to represent a source of moderate

to severe impairment in social and occupational settings."  (AR 595.)  Approximately one

year later, in July 2010, Dr. Long opined that Plante's mental condition had "significantly

---

[4] On other occasions during the alleged disability period, in August 2010 for example, Plante's
shoulder condition appears to have caused him "limited" range of motion and "significant loss of" range
of motion.  (AR 757.)  However, these instances appear to have been isolated, and they occurred while
Plante was unable to attend physical therapy due to the loss of insurance coverage.  (*Id.*)

deteriorated" largely due to outside stressors, including his children being taken from him, resulting in him being "functionally disabled from a standpoint of his depression." (AR 705, 706.)

The ALJ gave "little weight" to Dr. Long's July 2010 opinion that Plante was "functionally disabled," in part on the grounds that "the issue of disability is one reserved for the Commissioner." (AR 16.) This was a correct decision, given the clear Second Circuit law that "the ultimate determination of whether a claimant is disabled under the Social Security Act is 'reserved to the Commissioner.'" *Giunta v. Comm'r of Soc. Sec.*, No. 10-4869-cv, 2011 WL 5868419, at *1 (2d Cir. Nov. 23, 2011) (quoting 20 C.F.R. § 404.1527(e)(1)); *see Brown v. Comm'r of Soc. Sec.*, 310 F. App'x 450, 451 (2d Cir. 2009) ("A statement by a doctor that an individual is 'disabled' does not constitute a determination that an individual is disabled within the meaning of the law.").

The ALJ also explained that Dr. Long's July 2010 opinion "is not supported by the evidence of record or by Dr. Long's own treatment notes[.]" (AR 16.) If true, this is another lawful grounds for affording little weight to Dr. Long's opinion. *See Brown v. Comm'r of Soc. Sec.*, 310 F. App'x at 451. Under the "treating physician rule," a treating physician's opinion on the nature and severity of a claimant's condition is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." 20 C.F.R. § 404.1527(d)(2); *see also Schisler v. Sullivan*, 3 F.3d 563, 567-69 (2d Cir. 1993). Applied here, Dr. Long's opinion that Plante was disabled is not supported by citation to medically acceptable clinical and laboratory diagnostic

techniques.  Moreover, the opinion is inconsistent with other substantial evidence of

record, including his own treatment notes, as discussed in detail below.  Therefore, the

opinion was not entitled to controlling weight.  But even when a treating physician's

opinion is not given controlling weight, the opinion is still entitled to some weight

because a treating physician "[is] likely to be the medical professional[] most able to

provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and

may bring a unique perspective to the medical evidence . . . ."  20 C.F.R. §

404.1527(d)(2).  Under the Commissioner's regulations, when, as here, the ALJ decides

to afford less than controlling weight to a treating physician's opinion, the ALJ must

consider various factors in determining how much weight is appropriate, including the

nature and extent of the treatment relationship, whether the treating physician presents

relevant evidence to support an opinion, and whether the treating physician's opinion is

consistent with the record as a whole.  *Richardson v. Barnhart*, 443 F. Supp. 2d 411, 417

(W.D.N.Y. 2006) (citing *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000); 20 C.F.R. §

404.1527(d)(2)-(6)).

    The ALJ properly considered the relevant factors here.  He noted that Dr. Long

was Plante's "treating therapist," that they met on a weekly basis for at least some portion

of the alleged disability period, and that Dr. Long's opinions through July 2009 were

consistent with the evidence of record.  (AR 14, 16.)  With respect to Dr. Long's July

2010 opinion, however, the ALJ determined that it was not consistent with the record as a

whole.  (AR 16.)  The ALJ supported this determination with the following detailed

rationale, discussed briefly above:

> A month [after making his July 2010 opinion], Dr. Long submitted another letter indicating that he had been seeing the claimant on a weekly basis since January 2008.  He noted that the claimant continued to be extremely reliable in attendance.  The claimant had made significant improvement since his hospitalization.  In fact, even while hospitalized, the claimant's condition improved.  He became less depressed and noted no longer being suicidal; he was noted to be forward[-]looking in planning.  On the date of discharge, the claimant was free of suicidal and homicidal ideations, was in good spirits, displayed a full affect, and was pleasant and cooperative.  Considering the record as a whole, th[e May 2010] temporary exacerbation [of Plante's condition] cannot be considered to be reflective of the claimant's presentation and history of mental health impairments.

(AR 15 (citations omitted).)  The record, as cited in the ALJ's decision itself, supports these findings.  (*Id.*; *see also* AR 660-62, 755-56.)

Indeed, substantial evidence in the record – including Dr. Long's own opinion letters – reflects that Plante's increase in symptoms around May 2010 and other particular times was largely situational, as opposed to medical or psychological, having been caused by (a) stressors related to his attempts to regain custody of his children, (b) the negative effects of his prior criminal acts including on his ability to find work, and (c) his fear of incarceration for his prior criminal acts.  For example, a medical note from May 20, 2010 states: "[Plante] reported he is depressed and needs help.  He is hopeless due to kids moving further away . . . [and] reports he can not [sic] find a job due to communities [sic] anger with his burglary charges."  (AR 682.)  Moreover, in August 2010, Dr. Long stated: "The problems with chronic pain *and the legal issues that have been raised from his past history* have made [Plante's] efforts at employment totally unsuccessful and have even ma[d]e his ability to perform community service *because of those legal issues* difficult."  (AR 756 (emphases added).)  The Doctor continued: "He [has] ma[d]e significant

14

improvement . . . since [his recent hospitalization] . . . but it is something that is requiring continued focus and will continue to do so . . . as long as . . . *his environment is as invalidating as it has been*." (*Id.* (emphasis added).)  A few months later, in October 2010, Dr. Long reiterated that Plante's depression was partially a product of his past criminality[5] and drug abuse, stating: "[Plante's] life, because of *his legal history, his addiction history*, his chronic pain[,] and . . . his ADD . . .[,] make his employability at this point essentially nil and he has been unable to even remain in community service situations without having incidence[s] . . . leading to him being asked to not continue to participate . . . ."  (AR 378 (emphasis added).)  Dr. Long also stated that Plante's ability to function "would be significantly better" if he lived in "more supportive" circumstances, noting that he "lives in circumstances which are extremely advers[e] both physically and psychologically."  (AR 377.)  It can reasonably be inferred, based on the contents of Dr. Long's various opinion letters, including the October 2010 letter, that his reference to Plante's poor living "circumstances" included Plante's criminal past and resulting reputation in the community, his loss of custody of his children to the State, and his wife's continued drug abuse.

Other records similarly demonstrate that much of Plante's difficulty obtaining and maintaining a job was primarily situational and not a result of his medical and psychological impairments.  For example, a September 1, 2007 psychotherapy note states that Plante reported that he was "up against another court battle and [wa]s fearful he may

---

[5] As noted earlier, the record reveals that, as of June 2010, Plante had been arrested four times and had been incarcerated at least once.  (AR 440, 690.)

go to jail and state[d] he would kill himself before going back to jail." (AR 768.) And a September 7, 2010 psychotherapy note states that Plante was "struggling to manage multiple life stressors" and he was planning to "be honest with Dr. Long about [his] wife['s] sub[stance] use." (AR 767; *see also* AR 444 (medical center assessment form noting problems with support group, social environment, and legal system); AR 448 (medical center discharge form noting problems with support group, housing, economic, social environment, and legal system).)

### B.   Dr. Cook

In contrast to affording only "little weight" to Dr. Long's more recent opinions, the ALJ afforded "great weight" to the opinion of agency medical consultant Dr. Cook, who opined in November 2008 that Plante was only minimally restricted in his ability to lift, carry, stand, walk, sit, and perform postural tasks.[6] (AR 15, 573-80.) The ALJ explained that Dr. Cook supported his opinion with references to the medical record, and that such opinion was consistent with the evidence of record. (AR 15.)

Although in many cases it is most appropriate for the ALJ to give less weight to the opinions of non-examining agency consultants than to those of treating physicians, this determination must be made on a case-by-case basis, and the regulations clearly permit the opinions of non-examining agency consultants to override those of treating sources, when the former are supported by evidence in the record and the latter are not. *See* SSR 96-6p, 1996 WL 374180, at *3 (1996) ("In appropriate circumstances, opinions

---

[6] Dr. Cook opined on Plante's physical condition, where Dr. Long opined mainly on Plante's mental condition.

from State agency . . . consultants . . . may be entitled to greater weight than the opinions

of treating or examining sources."); 20 C.F.R. § 404.1527(f)(2)(ii) ("State agency . . .

psychological consultants . . . are highly qualified . . . medical specialists who are also

experts in Social Security disability evaluation . . . .").  Here, because Dr. Long's July

2010 opinion is *not* supported by the record, as discussed above, and Dr. Cook's opinion

*is* supported by the record, the ALJ did not err in affording more weight to Dr. Cook's

opinion than to Dr. Long's.

Plante argues that Dr. Cook's opinion should have been given less weight because

"plaintiff had extensive evaluation and treatment for left shoulder tendinitis after Dr.

Cook's assessment."  (Doc. 9 at 20.)  But, as explained above, there is no evidence

demonstrating that Plante's shoulder condition more than minimally affected his ability

to perform work activities, either before or after Dr. Cook made his opinion.  Moreover,

the ALJ explicitly recognized that additional evidence was received after Dr. Cook made

his opinion, and properly explained her decision to nonetheless give the opinion "great

weight": "Although additional evidence was later received into the file, this evidence did

not demonstrate a material change in [Plante's] physical presentation and Dr. Cook's

opinion remains consistent with the evidence in its totality."  (AR 15.)  In fact, Plante

does not cite to any medical evidence suggesting that he was more physically limited than

Dr. Cook opined, either before or after Dr. Cook made his opinion.  And a review of the

record reveals that, although Dr. Kevin Connelly noted in 2001 (prior to the alleged

disability period) that Plante could not continue doing heavy physical work such as

weatherizing homes and logging (AR 614; *see also* AR 611-12), no medical source has

found Plante to be more limited physically during the alleged disability period than Dr. Cook found him to be.

In considering Dr. Cook's opinion, the ALJ noted that Dr. Cook "indicated that the evidence of record showed amplified pain symptoms and narcotic[-]seeking behavior." (AR 15.)  This description of the opinion is accurate.  (AR 578.)  Plante asserts that the record "contains absolutely no evidence to support this conclusion for the period after March, 2006," and thus the ALJ should not have relied on Dr. Cook's opinion.  (Doc. 9 at 20.)  The Court agrees that the record does not support a finding that Plante engaged in narcotic-seeking behavior during the alleged disability period.  However, the ALJ did not adopt this particular finding of Dr. Cook's; rather, she referred to this statement in her description of the opinion.  Moreover, any error by the ALJ on this point is harmless because the fact remains that substantial evidence supports the ALJ's decision to afford great weight to Dr. Cook's opinion.  That opinion – which addresses only Plante's *physical* impairments – is consistent with and supported by the evidence of record.  The record as a whole, including Plante's February 2008 and July 2010 MRIs (AR 419, 763), his physical examinations (AR 496, 505, 544), and his ability to perform daily activities and at least some amount of physical labor (AR 334-37, 418, 543, 627), does not demonstrate that Plante's physical impairments significantly limited him functionally.

## III.   ALJ's Credibility Assessment

Plante argues that the ALJ erred in determining that his statements regarding the "intensity, persistence[,] and limiting effects of [his] symptoms" was not entirely credible.  (AR 13.)  It is the province of the Commissioner and not the reviewing court to

"appraise the credibility of witnesses, including the claimant." *Aponte v. Sec'y of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984).  Thus, if the Commissioner's credibility findings are supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints.  *Id.* (citing *McLaughlin v. Sec'y of Health, Educ., and Welfare*, 612 F.2d 701, 704 (2d Cir. 1982)).  "When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements."  SSR 96-7p, 1996 WL 374186, at *4 (July 2, 1996).  These reasons "must be grounded in the evidence and articulated in the determination or decision." *Id.*

Here, the ALJ explicitly considered the record and gave specific reasons for her determination that Plante's subjective complaints were not entirely credible.  For example, the ALJ stated as follows:

> At office visits, [Plante] consistently demonstrated the ability to perform a wide range of functional activities. . . .  In December 2007[, Plante] went from squatting on the floor to standing and sitting on the examination table without assistance. . . .  Further, the record documents reports of [Plante] chopping firewood.  It is also noted that for a time in March 2008 he worked as a shelf[-]stocker; he did not miss any work due to intermitte[nt] upper extremity numbness.  That he was able to sustain such an activity suggests that his shoulder and arm pain was not as severe as he reported.  Although [Plante] testified that he has not chopped wood in six years, the medical record reflects otherwise.

(AR 13 (citations omitted).)  Later in her decision, the ALJ provided further justification for her credibility determination:

> [Plante] relies heavily upon allegations of depression.  His presentation, as described in treatment notes, cuts against the strength of these allegations, as he was consistently noted to be dedicated to the [methadone maintenance] program, making good progress, and attend[ing] all

19

appointments.  That he was able to sustain this activity, involving maintaining attendance, concentration, and persistence, cuts against the strength of his allegations.

(AR 15.)

As explained above, the record supports the ALJ's findings.  In particular, with respect to Plante's work activity during the alleged disability period, there are multiple records indicating that Plante was able to do some work, although not at the level of substantial gainful activity, including cutting wood, managing apartments, and stocking shelves.  (AR 418, 429, 450, 543, 550, 627.)  Moreover, in March 2007, approximately one year into his alleged disability period, Plante told a medical provider that he "[t]hinks that he will be getting a job soon."  (AR 415.)  Other records reveal that Plante reported that his inability to secure long-term employment during the alleged disability period was due to the community's anger over his past "burglary charges," rather than due to his medical impairments.  (AR 682.)  The ALJ was entitled to consider this evidence in assessing Plante's credibility.  20 C.F.R. § 404.1529(c).

## IV.   Hypothetical to Vocational Expert

Finally, Plante argues that the ALJ failed to provide a hypothetical to the VE which reflected the record as a whole, and improperly based her hypothetical on the opinion of Dr. Cook.  As explained above, the ALJ's consideration of Dr. Cook's opinion was proper, and substantial evidence supports the ALJ's RFC determination.  Accordingly, the Court finds that the ALJ's hypothetical to the VE – which essentially mirrors the ALJ's RFC determination (*compare* hypothetical at AR 41-42 *with* RFC determination at AR 12) – accurately portrayed Plante's individual physical and mental

impairments.  Thus, the ALJ committed no error in this regard.  *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) ("Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a "hypothetical" question . . . "if the question accurately portrays [plaintiff's] individual physical and mental impairments."); *De Leon v. Sec'y of Health and Human Servs.*, 734 F.2d 930, 936 (2d Cir. 1984) (noting that hypothetical to VE must "present the full extent of" plaintiff's disabilities).

## <u>Conclusion</u>

For these reasons, Plante's motion (Doc. 9) is DENIED; the Commissioner's motion (Doc. 10) is GRANTED; and the decision of the Commissioner is hereby AFFIRMED.

Dated at Burlington, in the District of Vermont, this 13th day of December, 2011.

<u>/s/ John M. Conroy</u>
John M. Conroy
United States Magistrate Judge